IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FLORA SHORTER**, in her capacity as administratrix of the estate of the deceased, RONNIE LEE SHORTER

and

**QUINDARIUS JAMAL KHYDELL SMITH**　　　**PLAINTIFFS**

v.　　　Cause No. 4:20-CV-10-MPM-JMV

**CITY OF GREENVILLE, MISSISSIPPI**; and

**ERRICK D. SIMMONS**, in his individual capacity and as acting mayor of DEFENDANT CITY OF GREENVILLE, MISSISSIPPI; and　　　**Amended Complaint and Jury Demand**

**DARREL SAXTON**, in his individual capacity; and

**STEVEN TORREY**, in his individual capacity; and

**JULIAN PHILLIPS**, in his individual capacity; and

**JAMES EVANS**, in his individual capacity; and　　　RECEIVED
　　　NOV 2 0 2020
　　　UNITED STATES DISTRICT COURT
　　　NORTHERN DISTRICT OF MISSISSIPPI

**TABARI THOMAS**, in his individual capacity; and

**JOHN DOE POLICE OFFICERS**, in their individual capacities,　　　**DEFENDANTS**

## INTRODUCTION

1. On the night of January 21, 2017, Ronnie Lee Shorter returned to his home at 309 Neff Street, Greenville, Mississippi, a short time before 9:00 PM. Within minutes of his arrival and without announcing themselves, officers of the City of Greenville, Mississippi Police

Department surrounded Ronnie Shorter's home, in response to an anonymous complaint of gunshots heard in the neighborhood. When Ronnie Shorter came out to see who was lurking outside his home, presumably with his gun in hand, the officers started firing. The officers shot him in the back of the head and multiple times in his back, torso, legs and feet.

2. Since the killing, the City of Greenville has kept the circumstances of Ronnie Shorter's death a secret. This matter arises from the unconstitutional taking of Ronnie Shorter's life and the subsequent efforts of the City of Greenville to deny his surviving family access to the courts to find out the truth and vindicate their loved one's constitutional rights.

## JURISDICTION AND VENUE

3. This is a civil rights action arising under 42 U.S.C. § 1983 and the First, Fourth, Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the Defendants are located in this District and the events giving rise to Plaintiffs' claims occurred in Greenville, Mississippi.

5. Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

1. Quindarius Jamal Khydell Smith is a 26-year-old resident of Greenville, Mississippi and son of the late Ronnie Shorter, who was shot and killed by the defendant officers on January 21, 2017. Smith is a citizen of the United States.

2. Flora Jean Shorter is a 70-year-old resident of Greenville, Mississippi and mother of Ronnie Shorter. She is a citizen of the United States and serves as administratrix of Ronnie Shorter's estate.

3. Defendant City of Greenville, Mississippi (hereinafter, "Defendant City") is a political subdivision of the State of Mississippi duly organized under the Constitution and laws of Mississippi.

4. Defendant Errick D. Simmons is the mayor of the Defendant City and was acting as mayor at the time of Ronnie Shorter's killing.

5. The Police Department of Greenville, Mississippi ("Greenville Police Department") is an instrumentality of the City of Greenville, Mississippi organized and controlled pursuant to the statutes of the State of Mississippi and local laws of the City of Greenville.

6. Darrel Saxton, upon information and belief, is employed as a police officer with the Greenville Police Department. Mr. Saxton was an officer and present during the events on January 21, 2017. Defendant Saxton is sued in his individual capacity.

7. Steven Torrey, upon information and belief, is employed as a police officer with the Greenville Police Department. Mr. Torrey was an officer and present during the events on January 21, 2017. Defendant Torrey is sued in his individual capacity.

8. Julian Phillips, upon information and belief, is employed as a police officer with the Greenville Police Department. Mr. Phillips was an officer during the events on January 21, 2017. Defendant Phillips is sued in his individual capacity.

9. James Evans, upon information and belief, is employed as a police officer with the Greenville Police Department. Mr. Evans was an officer and present during the events on January 21, 2017. Defendant Evans is sued in his individual capacity.

10. Tabari Thomas, upon information and belief, is employed as a police officer with the Greenville Police Department. Mr. Thomas was an officer and present during the events on January 21, 2017. Defendant Thomas is sued in his individual capacity.

11. Defendant John Doe Police Officers, whose names are not known yet to the Plaintiffs, were police officers with the Greenville Police Department at all times relevant to this complaint. They were officers and present Defendant John Doe Police Officers are sued in their individual capacities.

12. At all times, each of the Defendants was acting under color of law.

## FACTUAL ALLEGATIONS

**The Unlawful Killing of Ronnie Shorter**

13. On January 21, 2017, Ronnie Shorter visited his aunt's house at 1013 Goethal Street, Greenville, Mississippi on or around 8:30 PM. One of Mr. Shorter's car tires was on flat and he needed a ride home. Mr. Shorter's cousin, Michael Gooden, agreed to drive him back to his home, located at 309 Neff Street, Greenville, Mississippi.

14. At 8:24 PM the same night, City of Greenville, Mississippi Police Department ("Greenville PD") Officers James Evans and Steven Torrey responded to an anonymous complaint of shots fired in the neighborhood of Mr. Shorter's home. Officers Evans and Torrey cleared the call as unfounded.

15. However, the caller informed the dispatch that she was unsatisfied with the way the officers handled the call. Despite there being no ongoing wrongdoing, the caller demanded officers return to the neighborhood.

16. Sergeant Jerome Jackson was asked by a Sergeant Redfield to return to the neighborhood and to specifically visit Mr. Shorter's home.

17. Between 8:40 to 8:50 PM, Mr. Gooden dropped Mr. Shorter off at 309 Neff Street. At that time, he did not see any police vehicle or anyone else on the street. As Mr. Gooden pulled off, he stopped at the corner of Neff Street and Canal. From there he heard what sounded like two gunshots and the flash of gunfire from the front of Mr. Shorter's home. He then heard the screen door slam close and saw the front porch light come on.

18. At or around the same time, the Greenville PD received a second call of shots fired. Before Sergeant Redfield could make it to Neff Street, Officers Evans, Torrey, Tabari Thomas, Darryl Saxton, and Julian Phillips arrived in the area.

19. Upon information and belief, they parked their cars some distance away from Mr. Shorter's home and walked to the area on foot.

20. The officers were told by dispatch that Sergeant Redfield gave the order for them to walk around the house and knock on the door to see if Mr. Shorter would come to the door.

21. The officers ignored their superior officer's instructions.

22. Officer Darrell Saxton – one of the more experienced officers – told the others to not go to Mr. Shorter's house. He told the others that "something is not right about this." He told the others that he "had a bad feeling."

23. The officers hid behind a tree at a home across from Mr. Shorter's home, which was dark because the light had been turned off.

24. Officer Phillips came later and, while walking down the street, he was yelled at by Officer Saxton and told to come hide behind the tree.

25. The officers devised a plan where they would sneak to the front of the house so Mr. Shorter could not see them.

26. They all snuck to a tree at the front of Mr. Shorter's home. There they spoke about how to go to the front of the door.

27. Outside the officers decided that Officer Saxton would knock on the door. He did, then ran back behind the tree. Nothing happened – Mr. Shorter did not come to the door.

28. At or around the same time - shortly before 9:00 PM, Ms. Flora Shorter, Mr. Shorter's mother, was on the phone with Mr. Shorter, to make sure that he had returned home safely. While on the phone, Mr. Shorter told Ms. Shorter that he heard something outside. He told her that he would call her back after he went to see what or who was outside of his home.

29. Officer Torrey walked down the street. When Officer Saxton realized it was Officer Torrey, and not Mr. Shorter, he yelled and told Officer Torrey to come to behind the tree.

30. The officers decided that Officer Phillips would knock a second time but was also told to get back after knocking. Officer Phillips knocked on the door then backed away from the front of the door and down the steps.

31. Mr. Shorter turned the front porchlight back on. He exited his home in his underwear, presumably with gun in tow based on the officers' account, to see who was lurking outside of his home.

32. As Mr. Shorter exited his home, Officer Saxton saw that Mr. Shorter held his gun in his hand. Officer Saxton yelled "GUN!" and shined a flashlight he was holding into Mr. Shorter's eyes.

33. As Mr. Shorter's hands reached up to block the light of the flashlight, Officer Phillips shot his weapon.

34. Officers Evans, Torrey, Thomas, Saxton also began firing. They shot Mr. Shorter multiple times.

35. Mr. Shorter's gun was dropped close to the front door as he began to run away from the barrage of bullets being fired by the officers.

36. As Mr. Shorter passed the officers -- running for his life -- they kept firing. They shot multiple bullets into Mr. Shorter's upper left back, his right bicep, his thigh, one bullet, his right foot, and one bullet into the center back of Mr. Shorter's head.

37. They did not stop shooting until Mr. Shorter hit the ground yards away at the street. They handcuffed his lifeless corpse and only removed the handcuffs prior to anyone arriving to

38. Altogether, Mr. Shorter suffered 11 bullet wounds from the gunshots. The officers called the paramedics at some point between 9:00 PM and 9:09 PM. Numerous other bullets entered Mr. Shorter's home.

39. According to the incident report, by the time Sgt. Jackson arrived the officers had developed a shared story. They told Sgt. Jackson that Mr. Shorter "came out of the house and started shooting at [them]." Sgt. Jackson "advised them to save their statements and to take up a perimeter to secure the scene until support units could arrive." Sgt. Jackson began to secure the scene of Mr. Shorter's brutal death with crime scene tape and took a blue plastic bucket to cover Mr. Shorter's alleged weapon.

40. Shell casings from Mr. Shorter's weapon were found around the front porch. These shell casings were from the initial shots that Mr. Gooden had seen Mr. Shorter fire when he arrived at home that night.

41. Ms. Shorter arrived at the scene shortly after the killing. Officers refused to let her get close to her son's body. It was raining at this time, but she could see under the sheet

placed over his corpse that he was lying face down with his head to the side. The blood that had pooled from the numerous shots from the officers' guns was slowly being washed away.

**The City of Greenville's Efforts to Bury the Truth**

42. In the days that followed, Ms. Shorter was advised by a family member to retain Attorney Brandon Dorsey, who they hired to represent them regarding Mr. Shorter's death. Upon information and belief, Attorney Dorsey never conducted any investigation into the circumstances of Mr. Shorter's death, nor did he file any claim on Ms. Shorter's behalf or that of any other interested party. To this day, Attorney Dorsey has not complied with the plaintiffs' request for their case file.

43. Ms. Shorter, Mr. Smith, and the rest of Mr. Shorter's family believed that some action was being taken on their behalf by Attorney Dorsey to investigate Mr. Shorter's death. They simply wanted to know if the story the officers told was a true one. For them, it was out of character that anyone – let alone Mr. Shorter – would come out of their home unprovoked shooting a gun. They knew no other details beyond what the officers had told and what was parroted in local media.[1]

44. Instead, when a family member looked to see if anything had been filed in the state or federal court system and found nothing, the family began to be concerned that they had been misled.

45. After making several requests under the Mississippi Public Records Act, the plaintiffs were shown photographs from the scene by the County Coroner that showed how Mr. Shorter's gun was close to the home and his body was near the street.

---

[1] *See, e.g.,* Therese Apel, *Man dead after shooting at Greenville Police*, CLARION LEDGER (Jan. 22, 2017, 1:36 PM), https://www.clarionledger.com/story/news/local/2017/01/22/man-dead-after-shooting-greenville-police/96920870/.

46. The plaintiffs also did not know that Mr. Shorter had been shot so mercilessly. Records the plaintiffs had expected their attorney to uncover showed that that Officers Evans, Torrey, Thomas, Darryl, and Phillips had invariably unloaded their weapons, resulting in 11 bullet wounds to Mr. Shorter's body, with the majority of bullets entering his back. One bullet was even fired to the back of his head, as if an execution.

47. Given the placement of the gun, Mr. Shorter's body, and the many entry wounds to his back, the family recognized that the officers had – at a minimum – shot him in his back long after he could have been a threat since he did not have a gun and officers could see that fact given the porchlight was on.

48. Once the family became aware of both the mischaracterization of Mr. Shorter's death told by the Defendant City, they decided to file this action.

49. The necessity of filing this action was more apparent after two members of Mr. Shorter's family visited the Greenville PD and were told, point blank, that the Greenville PD would not comply with the Mississippi Public Records Act and provide the plaintiffs copies of its policies and procedures. While the City's attorney has intimated he would provide copies, they have never been provided. The actions of the Greenville PD showed the agency to be lacking in transparency and a desire for accountability when addressed.

50. Further the City specifically has a policy of allowing officers two full days after killing someone prior to being interviewed for investigative purposes – a "cooling-off period" allowing officers time to create a narrative rather than tell the truth of a killing.

## COUNT I
### 42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations: Unreasonable Seizure
### (Against All Defendants)

51. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52. Defendants unreasonably seized Mr. Shorter, thereby depriving him of his right to be free from unreasonable seizure of his person and life in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

53. As a direct result of the conduct of Defendants described herein, the plaintiffs suffered and continue to suffer damages including: emotional trauma; fear; apprehension; loss of consortium; loss of economic benefits; and loss of faith in society.

54. The defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Mr. Shorter's Fourth Amendment rights. As a direct and proximate result of the defendants' unlawful actions, the plaintiffs were damaged.

55. At all times, the defendants were acting under color of state law.

56. If the plaintiffs prevail, they preserve their entitlement to recover attorney's fees pursuant to 42 U.S.C. § 1988 should they obtain legal counsel.

## COUNT II
### 42 U.S.C. § 1983 – Fourth and Fourteenth Amendment: Excessive Force (Against Defendants Saxton, Torrey, Phillips, Evans, Thomas and John Doe Police Officers)

57. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Mr. Shorter's Fourth Amendment rights. As a direct and proximate result of the defendants' unlawful actions, the plaintiffs were damaged.

59. The use of force against Mr. Shorter, by shooting him numerous times resulting in 11 bullet wounds, seven of which in the back after he no longer had the alleged gun in his

possession and had been shot four times, was objectively unreasonable under any circumstances.

60. As a direct result of the conduct of the defendants described herein, the plaintiffs suffered damages including: emotional trauma; mental anguish; fear; apprehension; loss of consortium; loss of economic benefits; and loss of faith in society.

61. At all times, the defendants were acting under color of state law.

62. If the plaintiffs prevail, they preserve their entitlement to recover attorney's fees pursuant to 42 U.S.C. § 1988 should they obtain legal counsel.

## COUNT III
**42 U.S.C. § 1983 – First and Fourteenth Amendment: Due Process and Access to Courts**

63. Plaintiff incorporated by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64. Defendants, acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated the plaintiff's civil rights.

65. In furtherance of this conspiracy, the defendants intentionally omitted key information regarding the circumstances of Mr. Shorter's death.

66. As a result of the defendants' actions, the plaintiffs did not file state law claims within the typical one-year statute of limitations under the Mississippi Tort Claims Act against the defendants.

67. As a result of the defendants' actions, the plaintiffs have been denied their First and Fourteenth Amendment rights of due process and access to the courts.

68. The acts described herein were intentional, wanton, malicious, and callously indifferent to the rights of the plaintiffs, thus entitling them to an award of punitive damages against the defendants.

69. At all times, the defendants were acting under color of state law.

70. If the plaintiffs prevail, they preserve their entitlement to recover attorney's fees pursuant to 42 U.S.C. § 1988 should they obtain legal counsel.

## COUNT IV
## 42 U.S.C. § 1983: Municipal Liability
***Monell* Claim against Defendant City of Greenville for Failure to Train, Failure to Discipline, Failure to Supervise, and for a Custom of Conducting Unreasonable Search and Seizures and Use of Excessive Force**

71. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72. Defendant City is liable to the plaintiffs pursuant to 42 U.S.C. § 1983 for the remaining defendants' violation of the plaintiff's and Mr. Shorter's rights because the violations were caused by a policy, practice, or custom of the City of Greenville Police Department. Among the Greenville PD policies, practices, or customs that caused constitutional harm to the plaintiffs are the following:

    a. Greenville PD's lack of policy and training on fatal use of force

    b. Greenville PD's policy of not complying with Mississippi Public Records law

    c. Greenville PD's custom, policy, or practice of violating the Fourth Amendment through the reoccurring wrongful and unreasonable killing of citizens.

73. Further, Defendant City has inadequately trained, supervised, and disciplined Greenville PD officers, including the remaining defendants, with respect to its officers' use of deadly force.

74. In its failures, Defendant City has been deliberately indifferent to the rights of citizens, and these failures and policies are the moving force behind, and direct and proximate cause of, the constitutional violations suffered by the plaintiffs as alleged herein.

75. As a direct result of the Defendant City's failures and policies and described herein, the plaintiffs suffered damages including: emotional trauma; mental anguish; fear; apprehension; loss of consortium; loss of economic benefits; and loss of faith in society.

76. If the plaintiffs prevail, they preserve their entitlement to recover attorney's fees pursuant to 42 U.S.C. § 1988 should they obtain legal counsel.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Shorter and Lloyd respectfully requests that this Court:

a. Enter judgment in favor of plaintiffs and against the defendants for each of Counts I through IV;

b. Award plaintiffs monetary damages of $11 million or an amount the Court deems appropriate, as well as all litigation costs, expenses, and attorneys' fees recoverable under 42 U.S.C. § 1988 should an attorney be hired to represent the plaintiffs;

c. Issue injunctive relief requiring the City of Greenville to refrain from the unconstitutional conduct described herein.

Dated: November 10, 2020            Respectfully submitted,

_____
Flora Shorter

_____
Quindarius Lloyd

U.S. POSTAGE >> PITNEY BOWES
ZIP 38751 $ 001.40
02 1W
0001401634 NOV 18 2020

Clerk, U.S. District Court
911 Jackson Avenue - Room 369
Oxford, MS 38655

Tiona Jean Shorter
Quindarius Jamal Phydell Smith
1020 Goethal Street
Greenville, MS 38701

DENIED

RECEIVED
NOV 20 2020
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

3865553622 C008

Sorry for sending late. We Misunderstood the order.

Jimmy

RECEIVED
NOV 20 2020
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI