IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**FLORA JEAN SHORTER in her capacity**                  **PLAINTIFFS**
**as administratrix of the estate of the**
**deceased, Ronnie Lee Shorter; AND**
**QUINDARIUS JAMAL KHYDELL**
**SMITH**

V.                                                                                                   **NO: 4:20CV10-M-JMV**

**CITY OF GREENVILLE, MS, ET AL.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

This cause comes before the Court on Defendants' Motion for Summary Judgment [157]. Plaintiffs have responded in opposition to this motion, and the Court having considered the submissions of the parties and the applicable law is prepared to rule.

**Factual and Procedural Background**

On January 21, 2017, the Greenville Police Department's 911 dispatch received multiple calls reporting shots fired on Neff Street in Greenville, Mississippi. Officers were dispatched to investigate the shots and were told the residence in question was a white house. The officers were not able to locate the person firing shots, nor did they hear or witness any shots being fired. After investigating the area, the officers left and returned to their patrol. Once the officers left the Neff Street area, Greenville Police Department's dispatch received a call informing them of the specific house where the shots were coming from and that Ronnie Shorter was the person firing the shots.

Greenville Police Department officers once again responded to the 911 call and specifically responded to 309 Neff Street. The officers approached the house, in which Ronnie Shorter was residing, and knocked while leaning against the house so they would not be directly in front of the

1

door. The defendants assert that the officers announced themselves as police. The plaintiffs, however, dispute this, stating that the police did not announce their presence verbally.

What happened next is disputed between the parties. The plaintiffs allege that Shorter opened the door and stepped onto the porch only to be shot by the officers. The plaintiffs further allege that the police did not provide any verbal directives after Shorter stepped onto his porch. The defendants say that after the officers knocked on the door, Shorter came out of the house quickly with a gun in his hand which he pointed and fired at officer Phillips. At this point the defendants state Shorter was moving backwards in the direction of Neff Street while firing shots at the officers near the house while the officers on scene were also returning fire. The plaintiffs allege that Shorter did not have a gun at the he exited the house and was shot. All agree that Shorter then fell to the ground dead.

The plaintiffs allege that the defendants violated Shorter's constitutional rights by unreasonably seizing him and by using excessive force against him. The plaintiffs further allege municipal liability against the City of Greenville, Mississippi. Finally, the plaintiffs allege they have been denied due process and access to the courts.

**Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150,

120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).  Once the moving party shows there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).  "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

## Discussion

### I. Unreasonable Seizure / Excessive Force

The parties agree that unreasonable seizure claims and excessive force claims essentially entail the same inquiry when the conduct alleged to constitute the unreasonable seizure is also the basis of the excessive force claim.  To prevail on a § 1983 excessive force claim in violation of the Fourth Amendment, a plaintiff must show (1) that he was seized, (2) that he suffered an injury, (3) which "resulted directly and only from the use of force that was excessive to the need, and that (4) the force used was objectively unreasonable." *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir.2004).  To prevail on a Fourth Amendment excessive force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) the excessiveness of the force was unreasonable." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir.2011.  The parties do not dispute that the plaintiffs have established an injury and that the injury was caused by the officers' use of force.  The question before the Court is whether the use of force was objectively unreasonable.  To make this determination "'[t]he excessive force inquiry is confined to whether the [officers] [were] in danger at the moment of the threat that resulted in

3

the [officers'] shooting.' Therefore, any of the officers' actions leading up to the shooting are not relevant for purposes of an excessive force inquiry in this Circuit." *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir.2014) (quoting *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 493 (5th Cir.2001)). The law "does not require the court to determine whether an officer was in actual, imminent danger of serious injury, but rather, whether 'the officer reasonably believe[d] that the suspect pose[d] a threat of serious harm to the officer or to others." *Young v. City of Killeen*, 773 F.2d 1349, 1353 (5th Cir.1985).

"It is objectively unreasonable to use deadly force 'unless it is necessary to prevent a suspect's escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir.2004), quoting *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir.2009).

Plaintiffs first argue that the officers could not have had an objectively reasonable belief that Shorter posed any degree of threat based on the facts leading up to the shooting. The plaintiffs allege that Shorter was only suspected of a misdemeanor, which was not even witnessed by the officers. The plaintiffs also place emphasis on the officers' "unusually aggressive approach" to Shorter's home. However, as stated in *Harris*, the officers' actions leading up to the shooting are not relevant for the purposes of an excessive force inquiry. 745 F.3d 772 (5th Cir. 2014).

Plaintiffs also allege that there is no evidence, besides the officers' testimony, that Shorter stepped onto his porch with a gun, much less even fired a gun at the officers. Without this evidence, the plaintiffs contend that the officers' use of deadly force was unreasonable. The

4

plaintiffs also reference the Mississippi Bureau of Investigation ("MBI") report, which does not specifically say that a firearm was found on or near Shorter's body.

The Fifth Circuit has found an officer's conduct to be reasonable with no excessive force where the officer fired at a suspect when the suspect pointed a gun at him. *Stroik v. Ponseti*, 35 F.3d 155, 159 (5th Cir. 1994). All five of the officers on scene testified that Shorter not only possessed and pointed a gun at officer Phillips, but that Shorter also fired at the officers. Each officer's testimony corroborates the testimony given by the other officers. However, a district court "d[oes] not correctly analyze the summary judgment record" in an excessive-force case when it "relie[s] entirely on the officers' account of events." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 276 (5th Cir. 2015).

Plaintiffs' alternative explanation of what happened is that Shorter stepped out of his home without a gun. The plaintiffs do not provide nor reference any witnesses, testimony, or evidence to establish this alternative theory. The plaintiffs note that the shell casings matching Shorter's gun found outside the residence could have come from a different day if Shorter was earlier firing shots outside of his home. The MBI report and the Greenville Police Department incident report also state that the shell casings matching Shorter's gun were found around the front porch and steps and in front of the home, matching the path that the officers state Shorter followed. The MBI report does not specifically state that a gun was found on or near Shorter, but the Greenville Police Department incident report states that Shorter's gun was recovered outside the home. The plaintiffs also note how Shorter was shot in the back by the officers, which is consistent with the officers' testimony that Shorter was moving backwards towards Neff Street where another officer was located with a gun. The only aspects of the incident that are not clear from the evidence are whether officer Phillips fired first and whether Shorter dropped his weapon soon after exiting the

5

house. The officers testify that Shorter raised his gun towards officer Phillips before any shots were fired by any party. The plaintiffs disagree with this though they have no proof otherwise. The plaintiffs also argue that Shorter was disabled from a previous accident that did not allow him to move as quickly as the officers contend. Finally, it is undisputed from testimony and evidence that Shorter moved from the front door of the house, down the steps, and in front of the house.

The plaintiffs also state that a warning should have been given to Shorter to drop his gun if he was carrying one. A warning before deadly force is used is only required "where feasible." *Garner*, 105 S.Ct. at 1701. The testimony, which the Court notes again is uncontroverted by other evidence, shows that even if the officers and Shorter talked through the door before Shorter exited the home, once Shorter stepped outside, he was immediately pointing the gun toward officer Phillips. There are no genuine factual issues presented to show that officers had the "time and opportunity" to give Shorter a warning to drop his weapon. *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019).

Plaintiffs also state that the officers continued to shoot Shorter after he dropped his alleged gun. To support this claim the plaintiffs cite to the testimony of officer Phillips, but the testimony provided to the court does not show this. The testimony only states that once Phillips dropped his gun, he did not continue much further. The officers contend that Shorter continued firing as he backpedaled from the porch, which could possibly explain the shell casings on the ground. However, the defendants have not provided any evidence showing that the gun was located near the body of Mr. Shorter after he was killed. Alternatively, the plaintiffs state that the gun was located near the front door. The plaintiffs argue that the shell casings are from Mr. Shorter previously firing his weapon outside, which is evidenced by the 911 call of shots fired. The 911 caller even stated that Shorter fired shots outside of his house "every other night." The evidence

6

shows that Shorter exited his home with a gun, as the plaintiffs have not provided nor cited to any evidence to dispute the defendants' evidence as to this fact, but there is a question of fact, however, as to whether Shorter continued on his path with or without the gun due to the lack of evidence portraying the location of Shorter's gun.

Assuming the plaintiffs' version of this fact, the question is whether continuing to shoot Shorter as he continued moving after dropping his weapon was excessive and objectively unreasonable. The factual dispute concerning the placement of the gun prevents the Court from answering this question. "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009). The plaintiffs argue in short that a reasonable officer would have known that Shorter was no longer a threat after dropping his gun near the porch, but the defendants claim that Shorter was still armed and shooting while moving towards the street. While the unproven location of the gun is not the deciding factor in the outcome of this case, it does prevent the Court from determining that Shorter was still carrying and firing the weapon during the entire event. With this finding, the Court holds there to be a question of material fact as to whether Shorter posed a reasonable threat of serious physical harm throughout the entirety of events that evening.

It is not disputed from the record that the officers were under the belief that Shorter had a gun and that he was recently firing a gun outside of his home. Plaintiffs' own complaint states that Shorter raised his hand when he exited the house, and that Shorter's gun was dropped shortly after exiting the house, which the Court notes conflicts with the version of events as stated by plaintiffs' brief in response to the present motion.

The Court notes that the plaintiffs' complaint states the following:

7

>	31. Mr. Shorter turned the front porchlight back on.  He exited his home in his underwear, presumably with gun in town based on the officers' account, to see who was lurking outside of his home.
>	32. As Mr. Shorter exited his home, Officer Saxton saw that Mr. Shorter held his gun in his hand.  Officer Saxton yelled "GUN!" and shined a flashlight he was holding into Mr. Shorter's eyes.
>	33. As Mr. Shorter's hands reached up to block the light of the flashlight, Officer Philips shot his weapon.
>	34. Officer Evans, Torrey, Thomas, Saxton also began firing. They Short Mr. Shorter multiple times.
>	35. Mr. Shorter's gun was dropped close to the front door as he began to run away from the barrage of bullets being fired by the officers.

[52].

Critically, the plaintiffs produce no evidence contrary to the above assertions by them, but only argue in their response to the present motion that Mr. Shorter did not have a gun.  The Court further notes that the plaintiffs complain that they do not have pictures of the scene, witness statements, and ballistics reports to support their argument.  These are evidentiary matters which plaintiffs have had approximately five years to resolve and prepare for this case.  This lack of evidence from both parties creates a question of material fact.  Litigation is a search for the truth and findings in this Court cannot be posited on unsupported arguments when the facts asserted are unopposed by other facts.  The Greenville Police Department incident report placing Shorter's gun "outside" is not enough to satisfy, without dispute, that Mr. Shorter continued to pose a reasonable threat to the officers for the duration of the event in question, as there is a material fact issue of when or if Shorter dropped his gun.

The defendants also claim that the officers are entitled to qualified immunity.  Qualified immunity, an affirmative defense, protects government officials in their personal capacity performing discretionary functions not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

8

73 L.Ed.2d 396 (1982); *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009). A police officer is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," even if the conduct violated the plaintiff's constitutional rights. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002)

First, the defendants argue that the defendant officers' conduct must be considered separately by the Court. However, the plaintiffs' complaint appears to allege that the officers essentially acted as a single unit in the events leading to Shorter's death. In cases where it is alleged that the officers acted in unison, the Court need not address the qualified immunity analysis for each officer. *Amador v. Vasquez*, 961 F.3d 721, 727 n.5 (5th Cir. 2020).

The plaintiffs argue that there are genuinely disputed facts that prevent the officers from relying on qualified immunity. Plaintiffs specifically reference their allegation that Shorter did not have a weapon, which would make the officers use of deadly force unconstitutional. As previously discussed, the plaintiffs state that the evidence does not show the gun near Shorter's body nor that the shell casings from Shorter's gun were from the night of the shooting. The evidence also does not show that the gun was far away from Shorter. However, it is clear from the evidence that Shorter's 9mm gun was located outside of the home. Even assuming the shell casings matching Shorter's gun located in front of Shorter's home were discharged at an earlier time, the plaintiffs have provided no evidence showing that Shorter did not point his gun at officer Phillips before being shot; plaintiffs only assert that Shorter was unarmed in their brief in response to this present motion without providing any evidence, testimony, or witnesses to show otherwise. The Court finds that a question of material fact exists as to whether Shorter dropped his gun and no longer posed a reasonable threat but continued to be shot by the officers.

Plaintiffs had to satisfy one of two requirements: the obviousness exception or the analogous case requirement. "The standard for obviousness is sky high…" *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020). For example, it has been held obviously unreasonable to shoot a suspect who was pointing a gun at his own head and did not even know the officer was present. *Cole*, 935 F.3d at 453. The Court has also found this requirement to apply in *Alexander*, when an officer used obviously unreasonable force on a suspect who did not pose any risk of harm, any risk of flight, and complied with the officer's requests. *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017). However, the Court need not rely on obviousness here, as multiple cases show that it was clearly established that after incapacitating a suspect who posed a threat, an officer cannot continue using deadly force. *Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009), *Plumhoff v. Rickard*, 572 U.S. 765, 777, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014)

To deny qualified immunity based on "clearly established" law, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 196 L.Ed.2d 463 (2017). With the analogous case requirement, the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590. 199 L.Ed.2d 453 (2018). Plaintiffs' cited cases which attempt to meet this requirement argue that deadly force is unconstitutional when the suspect poses no immediate threat to officers or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 105 S.Ct. 1694, 1701 (1985), *Graham v. Connor*, 490 U.S. 386, 396 109 S.Ct. 1865, 1872 (1989). Resolving the factual disputes in plaintiffs' favor, the officers are not entitled to qualified immunity, as a question of material fact exists concerning the location of Shorter's gun and whether he continued to be shot after dropping his gun. The

existence of factual disputes prevents the court from concluding that the officers are entitled to qualified immunity at this stage. It is the jury's duty to decide factual disputes as they exist in this case, and therefore summary judgment is denied as to plaintiffs' excessive force and unreasonable seizure claims and the defendant officers are not entitled to qualified immunity at this stage.

## II.     Municipal Liability

The plaintiffs allege that the city of Greenville is liable because the violations were caused by a policy, practice, or custom of the Greenville Police Department. Plaintiffs further allege that the city of Greenville has failed to adequately train, supervise, and discipline Greenville Police Department officers.

"A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691, 98 S.Ct. 2018; *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. 658, 98 S.Ct. 2018. A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights. *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018. To avoid respondeat superior liability and to impose liability on the City, the plaintiff must establish both the causal link (that the policy is the "moving force" behind the constitutional violation) and the City's degree of culpability ("deliberate indifference" to the known or obvious consequences of the City's unconstitutional policy). *Bryan County v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

To establish municipal liability under § 1983, a plaintiff must prove three elements: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive

knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" *Okon v. Harris County Hospital District*, 426 Fed.Appx. 312, 316 (5th Cir.2011). Alternatively, a policy may be "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

Plaintiffs have not identified the final policy maker that they believe has acted with deliberate indifference as required to establish municipal liability. However, while giving plaintiffs benefit of the doubt as to establishing a final policy maker, the claims still fail. The policy plaintiffs place in question is the "municipality's policy of failing to train its police officers." Plaintiffs acknowledge in the briefing that "there is no documented pattern of constitutional violations." [168]. "[The 5th Circuit] has been wary of finding municipal liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent rejection of respondeat superior liability." *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010). Plaintiffs instead argue that deliberate indifference can be shown with a single incident with "proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *McClendon v. City of Columbia*, 258 F.3d 432, 442 (5th Cir. 2001). The single incident theory "is generally reserved for those cases in which the government actor was provided no training

whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). The officers here were certified by Mississippi's Law Enforcement Training Academy. Officers were also trained on the use of deadly force. Plaintiffs appear to argue that the officers were not trained specifically on how to respond to calls of "shots fired" which resulted in the officers not following their usual response to calls of this sort. Plaintiffs assert that because calls reporting shots fired will result in officers encountering armed suspects, there is an obvious risk of entailing constitutional violations. There is only speculation by plaintiffs that the outcome of the incident would have been different if the officers were trained directly on this type of call. Plaintiffs offer no evidence that the failure to specifically train for shots fired calls was the cause, or moving force, behind Shorter's death.

Plaintiffs' argument that the city of Greenville has failed to supervise the officers also fails. To prevail on a failure-to-supervise claim, the plaintiff must show that (1) the supervision policies of the municipality were inadequate, (2) the municipality was deliberately indifferent in adopting such polices, and (3) the inadequate-supervision policies directly caused the plaintiff's injuries. *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). Proof that a single constitutional violation resulted from inadequate supervision is typically insufficient to hold a municipality liable for inadequate supervision. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Plaintiffs have failed to establish the elements of this claim as there is no evidence, at the very minimum, that the municipality was deliberately indifferent in adopting their policies nor is there evidence that the supervision policies directly caused Shorter's death. Summary judgment is due to be granted for this claim.

### III. Denial of Access to the Courts / Due Process

Plaintiffs also allege that the defendants reached an understanding to violate plaintiff's civil rights, omitted key information regarding Shorter's death, and caused the plaintiffs' to not file state

law claims within the statute of limitations. Once the defendants moved for summary judgment of all claims, plaintiffs did not respond to defendants' arguments regarding these claims. Plaintiffs have provided no evidence that their ability to avail themselves of the legal system was either denied or delayed. The allegations and statements surrounding these claims exist only in the complaint. Mere allegations are not sufficient to survive summary judgment, and thus defendants are entitled to summary judgment as to this claim.

## Conclusion

**ACCORDINGLY**, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [157] is **GRANTED IN PART and DENIED IN PART**. As a result, no claims remain against Errick D. Simmons, Mayor of Greenville, and no claims remain against the City of Greenville Mississippi, and thus Errick D. Simmons and the City of Greenville, MS, are **DISMISSED** as parties.

**SO ORDERED**, this 6th day of April, 2022.

/**s**/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**